DANA P. GREGORY           )
                             )
v.                         )     Nos.: 2:10-cv-124; 2:05-cr-64(1)
                             )     *Judge Greer*
UNITED STATES OF AMERICA    )

## **MEMORANDUM OPINION**

Dana P. Gregory ("petitioner" or "Gregory") brings this *pro se* motion to vacate, set aside, or correct a sentence, under 28 U.S.C. § 2255, (Doc. 183 in the criminal case).[1] As grounds for his § 2255 motion, petitioner presents Sixth Amendment claims of ineffective assistance of trial and appellate counsel and a due process claim under *Brady v. Maryland*, 373 U.S. 83 (1963).

### **I. Procedural Background**

At the close of a five-day trial on January 3-5 and 10-11, 2007, Gregory was convicted of being a felon in possession of a more than two hundred firearms, in violation of 18 U.S.C. § 922(g)(1) (Counts 1-2); possession with the intent to distribute oxycodone, in violation of 21 U.S.C. § 841) (Count 4); possession of a firearm, including a machinegun, in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1) (Counts 5 and 6); possession of a machinegun, in violation of 18 U.S.C. § 922(o) (Count 7); and possessing contraband in prison, in violation of 18 U.S.C. § 1791(a)(2) (Count 8)—all as alleged in the Third Superceding Indictment, (Doc. 99). For these offenses, he was sentenced to a 511-month prison sentence (120 months on Counts 1, 2, and 7, 151 months on Count 4 and 60 months on Count 8, all to be served concurrently; and 60 months on Count Five and 360 months on Count 6—both counts merged into one consecutive 360-month sentence), (Doc. 146). Gregory filed a direct appeal, but the judgment was affirmed. *United States v. Gregory*, 311 Fed. Appx. 848, 2009 WL 415994 (6th Cir. Feb. 19, 2009).

---

[1] Docket number citations in this opinion refer to Gregory's criminal case (No. 2:05-cr-64).

The United States Supreme Court denied Gregory's petition for a writ of *certiorari*, *Gregory v. United States*, 129 S. Ct. 2880, 174 L. Ed. 2d 590 (2009), and he filed the instant § 2255 motion timely on June 4, 2010, (Doc. 183).

## II. Standard of Review

This Court must vacate and set aside petitioner's sentence if it finds that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . . ." 28 U.S.C. § 2255. When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating those allegations with facts is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (§ 2254 case); *United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152 (1982).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively that the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. Facts

The facts are drawn from the Sixth Circuit's opinion on direct appeal. *Gregory*, 311 Fed. Appx at 851, 853-55, 2009 WL 415994, at *1,*3-*5.

Following two searches of his home and one search of a storage unit he had leased, Gregory moved to suppress the drug and firearm evidence obtained thereby. The magistrate judge, in a Report and Recommendation ("R & R"), recommended that Gregory's motion to suppress evidence relating to the first and third search warrants be denied. (The government agreed not to present evidence collected as a result of the second search and that issue was not pursued.) The R & R was adopted without any objections.

Special Agent Greg Moore of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the affiant of both search warrant applications and one of the numerous witnesses at the trial, corroborated the information set forth in his warrant affidavits and testified that, while searching the storage unit, agents seized approximately 190 firearms, all of them manufactured outside of Tennessee; 17,000 rounds of ammunition; a container for a surface-to-surface missile; and documents and military manuals on "unconventional warfare devices and techniques," "booby traps," and "munitions."

Seven witnesses, including Gregory's long-time friends and neighbors, testified that he supplied them with oxycodone and other drugs in exchange for their cash, labor, or stolen merchandise, including firearms, construction equipment, and tools. Witnesses stated that they saw firearms and illegal drugs in Gregory's house, that he was always armed with a gun, which information he made known, and that he boasted that he had enough firearms "to start an army." One witness identified two firearms recovered from Gregory's storage unit as having been stolen from him.

The owner and manager of the storage unit corroborated the information set forth in the affidavit requesting the third search warrant. They testified that, by the terms of the lease agreements, tenants were barred from storing flammable, combustible, or explosive items in their units and that, in the event of an emergency, management was authorized to enter a storage unit, without notice or consent. The witnesses also stated that officers told them that they "thought" or

3

"believed" that there were explosives in the unit and that the officers looked into the unit, but did not enter it after cutting the lock and before obtaining the search warrant.

Gregory's cell mate testified that, while Gregory was in federal custody on the charges in this case, Gregory attempted to conspire with him to escape from the jail by injecting a bleach-filled syringe into the necks of certain officers when they entered his cell to serve him food. The cell mate also stated that Gregory tried to procure a gun in jail and asked him to transport oxycontin after they escaped. The cell mate reported those plans to jail personnel, who searched Gregory's cell and found a fully-intact syringe, a razor blade, another needle from a syringe, twist ties, ink pens, and a nail clipper. Those items, according to testimony from a deputy United States marshal, can be used as weapons and inmates are banned from possessing them.

At the close of the government's case-in-chief, Gregory again moved to suppress the evidence obtained from the first and third searches of his home and storage unit and moved for acquittal on all counts, except Counts 1 and 2. Unsuccessful in both endeavors, Gregory was convicted by the jury on the first, second and fourth through eighth counts. He filed no objections to the presentence investigation report ("PSR"), confirmed at sentencing that the information contained in it was correct, and thereafter, again without any objections, was sentenced to 511 months of incarceration.

## IV. Analysis And Discussion

Petitioner alleges, as the three main grounds for relief in his § 2255 motion: (1) that he received ineffective assistance from trial counsel, David L. Leonard and Bruce E. Poston, the latter of whom replaced Attorney Leonard prior to the suppression hearing; (2) that he received ineffective assistance from his appellate counsel, Robert L. Vogel; and (3) that favorable evidence was suppressed by the prosecution. Because several of the thirteen claims contained in ground one are redundant and intermingled, the Court has consolidated the original thirteen claims into eight for purposes of succinctness. Ground two, ineffective assistance of appellate counsel, and ground three, the alleged *Brady* violation, have been renumbered as claims nine and ten. The Court addresses each ground in order.

A. **The Governing Law**

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. IV. A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a break down in the adversary process that renders the result unreliable.

*Id.* As with any other claim under § 2255, the burden of proving ineffective assistance of counsel is on the movant. *Virgin Islands v. Nicholas*, 759 F.2d 1073, 1081 (3d Cir. 1985).

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Second, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland,* 466 U.S. at 694). "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 454-455 (quoting *Strickland*, 466 U.S. at 694). A petitioner must demonstrate that, due to counsel's deficient performance, there was a "breakdown in the adversary process that rendered the result of the proceeding unreliable." *Id.* (quoting *Bell v. Cone*, 535 U.S. 685 (2002)). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992). The Sixth Amendment right to counsel extends to plea negotiations, *Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010), and generally requires defense counsel "to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 132 S. Ct. 1399, 1408 (2012).

## B. **The Claims**

### 1. *Inadequate Pretrial Investigation*

In this all-embracing claim, Gregory alleges that, in several instances, his attorneys conducted a sub-par pretrial investigation, (Doc. 183-2, Petr.'s Br., Claims 1, 5, and 7). Counsels' multiple pretrial failings,[2] as petitioner views them, constituted a deficient performance, which ensued in prejudice, as is manifested in unidentified portions of the trial transcripts.

#### a. *Prescription for the Drugs*

In the first incident, petitioner argues that counsels failed to inquire into the source of the drugs, to present evidence that he had a prescription for and lawfully possessed some of the drugs, and to interview potential witnesses and individuals who had favorable information Petitioner makes the allegations which follow in support of this set of allegations.

Petitioner told Attorney Poston, who visited him only twice in jail, that the pills were prescribed to him by a doctor. Poston did not discuss the facts or law of the case, never told Gregory about the evidence against him, and spent his entire first visit trying to convince Gregory

---

[2] Two sets of allegations contained in this claim were also offered in Gregory's Fourth Amendment claims. The allegations involve counsels' failure to investigate purported thefts of petitioner's property by a police detective and their failure to pursue a *Franks* hearing—both of which involve counsels' pretrial errors. To promote cohesiveness and avoid redundancy in this opinion, these allegations concerning the claimed theft and the *Franks* hearing will be addressed later, within the context of the Fourth Amendment issues.

to plead guilty. The second visit by Poston was consumed with a discussion of his other cases, rather than with petitioner's case. The third time Gregory saw Poston was the day of the trial.

The United States indicates that its investigation into this case did not disclose any proof that Gregory possessed a prescription, but that the investigation did reveal that the oxycodone was kept in a locked toolbox (as opposed, say, to a medicine cabinet), and that testimony was presented at trial that petitioner had purchased or bartered for the drugs with guns, labor, and other merchandise. Respondent also maintains that the claim is conclusory.

The Court agrees that the claim is conclusory, in that petitioner has failed to identify the doctor who was his prescribing physician for the oxycodone, or to allege any details whatsoever concerning the supposed prescriptions, such as the medical condition that necessitated treatment with oxycodone or the dates of the prescriptions, or even the pharmacy where the prescriptions were filled or refilled. While *Strickland* imposes upon an attorney "'the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence,'" *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)), Gregory has not identified any potential witnesses, nor described their expected testimony to show that such testimony would have been favorable. *See United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[T]he testimony of a putative witness must generally be presented in the form of actual testimony by the witness or on affidavit; [a] defendant cannot simply state that the testimony would have been favorable, [as] self-serving speculation will not sustain an ineffective assistance claim.") (footnote omitted).

*b. Interview Crucial Witnesses*

In the next example of trial counsels' incompetent pretrial investigation, petitioner maintains that they failed to interview potential witnesses who could have provided critical testimony and evidence related to petitioner's interaction with witnesses at the criminal trial. Many of these witnesses falsely testified about dates, places, and their association with petitioner, so he alleges.

Respondent argues that petitioner has provided no factual support for the allegations involving counsel's failure to interview witnesses, since Gregory has not identified the witnesses

whom counsels failed to interview nor has he laid out their expected testimony. Respondent's point about the lack of any factual support is correct.

Gregory has not identified any witnesses whom counsel failed to interview. Petitioner likewise has not supplied the substance of the expected testimony of these putative witnesses, which would have supported his proffered theories of defense or would have encompassed information favorable to him. Bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991). These undeveloped allegations cannot serve as a basis for finding ineffective assistance. *See Ashimi*, 932 F.2d at 650.

*c. Mental Health Issue*

Counsels, according to Gregory's lights, did not thoroughly investigate his mental health background. Again, respondent counters that there are no facts to undergird this claim.

Respondent's observation is accurate, as petitioner has not indicated the nature of the mental illness(es) in his background from which he suffers and which his attorneys failed to investigate and present as evidence. Indeed, the docket sheet in Gregory's criminal case reflects that the opposite is so with respect to counsel's inquiry into petitioner's mental health. Counsel requested a competency evaluation for his client, petitioner was ordered to undergo the evaluation, the resulting forensic report was adverse to his interests, and he was found competent, (Docs. 18, 24, 30, 148).

Unless a petitioner specifies the information which an adequate investigation would have uncovered and describes the favorable nature of that information, his allegations of ineffective assistance are inadequate to show a deficiency of performance and resulting prejudice to the defense.

For all these reasons, the Court finds the first claim in its entirety to be conclusory and insufficient to support relief. *Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that a conclusory statement is insufficient to raise the issue of ineffective assistance of counsel); *Sanders v. Trickey*, 875 F.2d 204, 210 (8th Cir. 1989) (a § 2255 movant who offered no witness affidavit or other independent support failed to show prejudice); *Tucker v. United States*, 423 F.2d 655, 656 (6th Cir. 1970) (pure conclusory statements in a § 2255 motion, absent any specific allegations as to how, when, and where the claimed constitutional infringements occurred, would not be credited). Given the lack of any developed argument to sustain a finding of ineffective assistance of counsel, the

Court finds that counsel's representation did not violate petitioner's Sixth Amendment right to counsel.

## 2. Suppression Issues

This claim involves counsels' alleged failure to pursue evidence concerning the search of Gregory's residence and storage unit and the conduct of the officers and others involved in the search. Petitioner presents several arguments in support of this claim.

### a. Stolen Property/ Dismissal of the Indictment (Claims 1 and 2)

First, Gregory asserts that the search executed at his residence on July 12, 2005, resulted in the illegal removal of items and property, worth tens of thousands of dollars, which ultimately were converted for the personal use and enrichment of Church Hill Police Detective Dustin Dean. Petitioner charges that law enforcement agents falsified documents and fabricated evidence to ensure his conviction and the forfeiture of his other assets. (Purportedly, Dean had a vendetta against petitioner because petitioner was slated to be a witness against Dean in a criminal case.) Gregory maintains that he told Attorneys Leonard and Poston that Dean, using his police powers, diverted evidence and property from the search of petitioner's residence to the Dean family business, where it then was unlawfully disposed of. These attorneys responded by telling petitioner there was nothing he could do about law enforcement agents stealing his property. Moreover, counsels refused to make a record of the property being stolen and the motive for the fabrication of evidence and falsification of documents—the motive, Gregory asserts, was to cover up the theft of his property. Allegedly, Attorney Leonard described the situation as a civil matter and Attorney Poston ignored the information.

Gregory's ancillary argument is that the provision of false material statements to support search warrants and the indictment was sufficient to show that he was demonstrably prejudiced and that the officers' misconduct substantiality influenced the grand jury's decision to indict him. Gregory surmises that, had his attorneys investigated his contentions against Dean and gathered information involving discrepancies between the evidence seized during the search and the evidence inventory logs, this would have furnished the basis for a successful motion to dismiss the indictment, based on outrageous police conduct.

### b. Pilferage/ Chain of Custody Allegations (Claim 4)

The second flaw connected to the search, which counsel did not pursue, was that the crime scene was tampered with or contaminated by a prisoner who had access to Gregory's residence during the search. The oxycodone pills which were seized during the search allegedly were found in a locked toolbox, from which that prisoner, one Nathan McNew, took a bag of pills (Valium). As a result, McNew was criminally charged with tampering with or stealing evidence.

Petitioner asserts that his attorneys should have moved to suppress the evidence derived from that search, on the basis that it was tainted from McNew's pilferage, and that the evidence should not have been admitted. Also, counsel should have made a judicial record of the taint and the broken chain of custody, when the government witnesses testified as to the evidence. The Court infers that petitioner is alleging that counsel should have inquired into the theft during his cross-examination of the adverse witnesses. Gregory maintains that he was denied a fair trial by the introduction against him of evidence that had been corrupted.

### c. Franks Hearing (Claim 8)

The third claimed flaw in the search was that the search warrant was invalid because intentional and knowing false statements were made in the affidavit to support probable cause. Attorney Leonard filed motions to suppress based on the lack of probable cause and advised the court that he was still in the process of investigating whether there existed grounds for attacking the search warrants under *Franks v. Delaware*, 438 U.S. 154 (1978).[3] Attorney Poston, who appeared at the suppression hearing, sought and was granted additional time to pursue a motion for a *Franks* hearing. Even with this extra time, Poston did not file a *Franks* motion nor did he file objections to the Magistrate Judge's recommendation that the suppression motions be denied. Had counsels investigated and researched the *Franks* issue, specifically the information petitioner related to them

---

[3] A defendant is entitled to a hearing to challenge the validity of a search warrant if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and ... the allegedly false statement is necessary to the finding of probable cause." *Id.* at 155-56. Since Attorney Poston was representing Gregory at the suppression hearing when the defense was given extra time to make the showing required by *Franks*, presumably this allegation is levied against him alone.

about the police efforts to illegally take his property, this would have satisfied the substantial preliminary showing necessary to merit a *Franks* hearing.

Respondent disagrees, arguing that petitioner's contentions regarding the theft of his property by Detective Dean are not supported by specific facts, such as the nature of the items stolen, when and how he realized that those unidentified items were missing, or how he knows that Dean is the party responsible for the disappearance of those items. Respondent suggests that the same is true with respect to the allegations regarding the *Franks* hearing, as Gregory has omitted any details concerning the alleged false statements which were made by the affiants to support probable cause to issue the search warrants.

Without these types of allegations, these particular arguments are conclusory and, as noted with respect to the first ineffective assistance claim, allegations which are conclusory will not support relief. *Elzy*, 205 F.3d at 886. Likewise, speculation and conjecture that false statements were made to furnish probable cause to secure a search warrant are not enough to warrant a *Franks* hearing. *United States v. Garner*, 119 Fed.Appx. 119, 125, 2004 WL 2980567, *5 (9th Cir. Dec. 23, 2004) (Speculation "is patently insufficient to satisfy [defendant's] threshold burden under *Franks*."); *United States v. Pace*, 898 F.2d 1218, 1228 (7th Cir. 1990)(Speculation regarding what a witness might say if questioned is "an insufficient reason to hold a *Franks* hearing."); *United States v. Mayomi*, 873 F.2d 1049, 1056 (7th Cir. 1989) ("[I]t is obvious that the defendant lacks sufficient facts to support his speculative assertion that [the affiant's] veracity should be called into question," so as to support a *Franks* hearing.). Furthermore, with respect to statements contained in the warrant affidavits which counsel contested at the trial, this Court concluded, as respondent indicates, that those statements were true.

As to the jail inmate who had been tapped to help load items for transport which had been seized during the search and who apparently helped himself to some of the drugs, respondent suggests that any questioning on the part of counsel into that episode would have shown, at most, that the inmate had tried to take items *from* the residence, not that he planted evidence or otherwise compromised incriminating evidence seized *within* the residence. According to the United States, any inquiry into this matter by defense counsel would not have cast doubt on the government's case

against Gregory for possessing oxycodone with the intent to distribute it because the jury could have credited the testimony of various witnesses who stated that they had bought oxycodone from Gregory.

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

Here, given the cited testimony of the witnesses that petitioner has sold them oxycodone, the Court is unable to conclude that, had the seized oxycodone pills been excluded from the evidence, that there is a reasonable probability that the outcome would have been different with respect to the drug offense. Furthermore, Gregory identifies the pills which were purloined by the inmate as Valium, not oxycodone, and he does not attempt to make a connection between the purported misappropriation of Valium and the evidence of his possession of oxycodone, nor does the Court perceive any such a nexus.

For the above reasons, the Court finds no merit to petitioner's second claim of ineffective assistance.

### 3. Plea Negotiations/ Failure to Advise

In this claim, Gregory asserts that his attorney never gave him the advice he needed in order to make an informed and intelligent decision to plead guilty or go to trial. Petitioner maintains, for example, that counsel did not adequately explain his potential sentence exposure, as he was never told that he was exposed to over 400 months imprisonment on the weapon charges alone, nor informed as to what the government would have to prove to convict him. Nor did counsel pursue plea negotiations diligently because otherwise counsel might have obtained a more favorable plea deal than the one which was offered and which, by implication, was unreasonable and, therefore, rejected. Had counsel acted as he should have acted, Gregory contends that there is a "reasonable probability" that he would have pled guilty and, thereby, avoided a trial and over 500 months

imprisonment or that he, at least, would have given serious consideration to pleading guilty "to some of the charges."

Respondent counters that counsel cannot be deemed to have given ineffective assistance for failing to secure a plea agreement which petitioner would have found acceptable. The plea bargain which was proffered to petitioner was that, in exchange for his guilty pleas, he would cooperate with the government, forfeit certain property, and be sentenced to no less that fifteen years confinement. According to the United States's response, it never would have agreed to cap Gregory's sentence exposure below that contained in the offer, i.e., less than fifteen years confinement.

An attorney gives ineffective assistance where a formal plea offer is made, but not conveyed to a client, or if conveyed to the client, rejected based on incorrect advice by counsel, and where further proceedings lead to a less favorable sentence. *Lafler v. Cooper*, 132 S.Ct. 1376 (2012); *Missouri v. Frye*, 132 S. Ct. 399 (2012). Gregory's case is dissimilar in two respects—the government's plea offer was conveyed to him and his attorney encouraged him to accept it. Moreover, the government maintains that it would have been unwilling to enter into a plea agreement which contained a sentence exposure cap of less than fifteen years. No prejudice ensues from counsel's failure to obtain a plea agreement that never was available.

It appears that petitioner may have overestimated his attorney's ability to extract from the government a plea agreement, which it did not intend to offer. Suffice it to say, counsel was not required to accomplish the impossible to meet his constitutional obligations—he need only provide reasonably effective assistance. *Strickland*, 466 U.S. at 687. The Court concludes that he did so, in this instance. Therefore, counsel's recommendation that the petitioner plead guilty under the terms of the agreement offered —not one scripted by the petitioner— and his failure to obtain from the government what Gregory considered to be "a reasonable plea offer," does not constitute a deficient performance.

Likewise, there is no prejudice from counsel's claimed error since petitioner takes somewhat contradictory stands on this issue, by alleging, on the one hand, that there is a "reasonable probability" that he would have pled guilty, while, on the other hand, asserting that, depending on whether counsel presented to him "a reasonable plea offer," he "would have seriously considered

pleading guilty to some of the charges," (Doc. 183-2, Petr.'s Br. at 9). Prejudice, in the context of a plea negotiations, has resulted only where there exists a reasonable probability that petitioner and the court would have accepted the guilty plea, i.e., the one which the government actually offered. *Lafler,* 132 S. Ct. at 1391. A "reasonable probability" that a guilty plea would have been accepted seems to require a great deal more certainty of acceptance than Gregory's assertions that there was a reasonable probability that he would have accepted a plea agreement which never materialized (i.e., one tailored to his specifications), or would have given "serious consideration" to pleading guilty to some of the charges.

Because counsel did not give a prejudicial performance in this instance, petitioner's contentions to the contrary are groundless.

### 4. Multiplicious Indictment/ Double Jeopardy (Claims 9 and 12)

Gregory maintains, in this claim, that in Counts 5 and 6, he was charged with possession of a firearm in furtherance of a drug trafficking offense under § 924(c)(1). The drug trafficking offense which served as a basis for the firearms charges was the oxycodone charge in Count Four. Petitioner argues that the law is settled that the government may not charge a defendant with more than one § 924(c) offense related to a single predicate offense. Furthermore, Gregory alleges that, when he was convicted of Counts 5 and 6, he received multiple punishments for one offense in violation of his double jeopardy protections. Petitioner asserts that counsel's failure listen to a wealth of information and knowledge to support a challenge to the indictment, which petitioner passed on to him, and to use the information to raise these issues, amounted to ineffective assistance.

According to the United States, Gregory has ignored the fact that he was charged with two different crimes: with possessing a firearm in Count 5 and with possessing a machinegun in Count 6. Citing to *United States v. Vartainian*, 245 F.3d 609, 616 (6th Cir. 2001), respondent maintains that since those offenses have different elements and require different proof, the counts were not multiplicitous. While initially appealing, this position actually is not supported by the law.

The statute under which these two convictions were had provides, in relevant part, that "any person who, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment

provided for such ... drug trafficking crime ... be sentenced to a term of imprisonment of not less than 5 years." 18 U.S.C. §924(c)(1)(A)(i). The statute goes on to say: "If the firearm possessed by a person convicted of a violation of this subsection ... is a machinegun ... the person shall be sentenced to a term of imprisonment of not less than 30 years." 18 U.S.C. §924(c)(1)(B)(ii). Finally, the statute requires that "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the ... drug trafficking crime during which the firearm was ... possessed." 18 U.S.C. §924(c)(1)(D)(ii).

An indictment charging the same crime in two counts is multiplicitous. *United States v. Robinson*, 651 F.2d 1188, 1194 (6th Cir. 1981). A mulitplicitous indictment runs the risk of violating double jeopardy protections as it may result, upon conviction, in multiple punishments for a single offense. *United States v. Reedy*, 304 F.3d 358, 363 (5th Cir. 2002) ("The chief danger raised by a multiplicitous indictment is the possibility that the defendant will receive more than one sentence for a single offense.") (citation omitted); *United States v. Sims*, 975 F.2d 1225, 1233 (6th Cir. 1992). The protection against double jeopardy is transgressed by the imposition of more than "one sentence upon a defendant for violations of section 924(c) which relate to but one predicate offense." *United States v. Sims,* 975 F.2d 1225, 1233 (6th Cir. 1992). The Sixth Circuit has stated that

> § 924(c)'s unit of prosecution is the underlying offense, not the number of firearms. Where the indictment charges a single predicate offense, a court may not enter a judgment of conviction against a defendant, and may not sentence a defendant, for multiple § 924(c) counts in relation to that single predicate offense. Consequently, we hold that the District Court erred as a matter of law when it convicted and sentenced [defendant] to two violations of § 924(c)(1).

*United States v. Taylor*, 13 F.3d 986, 994 (6th Cir. 1994) (footnote omitted).

To remedy such a violation, a court must either vacate all but one of the § 924(c) convictions and sentences or merge all of the § 924(c) convictions and sentences into one. *United States v. McNeil*, 106 Fed. Appx. 294, 305, 2004 WL 1544486, *9 (6th Cir. July 1, 2004) (citing *Taylor*, 13 F.3d at 994, and *Sims*, 975 F.2d at 1235–36). But whichever remedy is chosen, "the sentence

15

imposed by the district court should be the highest of the sentences authorized by Congress and supported by the evidence." *Id.* (citing *Sims*, 975 F.2d at 1236).

In this case, as reflected in the PSR at ¶71, the Court chose the second option and merged petitioner's 60-month sentence under § 924(c)(1)(A)(i); his 360-month sentence under § 924(c)(1)(A)(ii); and his respective convictions on Counts 5 and 6 for a net term of 360 months and, thereafter, imposed the higher sentence of 360 months, in keeping with the dictates of *Sims*. Thus, petitioner's single sentence for these two § 924(c) offenses did not offend double jeopardy.

Here, even if counsel's performance was deficient for failing to raise the multiplicity issue earlier, Gregory cannot make the requisite showing of prejudice because any flaw in the indictment did not result in a double jeopardy violation. Counsel did not render a prejudicial performance with respect to the double jeopardy issue since counsel has no duty to assert a legally baseless claim, *United States v. Martin*, 45 Fed. App'x 378, 381 (6th Cir. 2002); *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986), and since he cannot be ineffective when he does not raise such a claim. *Greer v. Mitchell*, 264 F.3d 663, 676 (2001), Gregory's claim of ineffective assistance falls short.

### 5. Failure to Obtain a Firearms Expert (Claim 6)

In support of his next claim, petitioner maintains that counsel was ineffective for failing to procure the services of an expert to provide testimony concerning the mechanical design of certain Iver Johnson carbines. The firearm seized during the search of petitioner's home was an Iver Johnson M-1, which had a selector switch, and the government's expert testified that the firearm was a fully automatic version of an Iver Johnson carbine. However, according to Gregory, Iver Johnson manufactured some versions of the M-1 (semiautomatic) carbine, also with selector switch, which were not functional. An expert witness, according to Gregory, could have explained that to the jury, but when petitioner asked his attorneys to investigate this issue, they said the selector switch issue was irrelevant, as the government only had to show that the firearm was fully automatic. Petitioner asserts that, had counsel hired the firearms expert, there is a reasonable

probability that the jury would have acquitted him on count 6 for possession of a machine gun in furtherance of a drug trafficking offense.

The United States argues that its expert testified that the firearm in question originally had been an M-1 carbine, but had been modified with certain M-2 parts, field tested, and found to be operable as a machinegun. Respondent further argues that, had counsel presented a defense expert to testify about selector switches, such testimony could only have resulted in an acquittal had the jury ignored the government's evidence showing that the gun at issue had been converted into a fully automatic weapon.

During the trial, the government offered expert testimony that "generally, M1 carbine firearms do not have [a] selector lever; that's an indication that the firearm may be capable of both semi-automatic and fully automatic fire;" that the M-1 carbine at issue in this case had a selector switch; and that it "contains additional internal parts that when combined with the selector lever make it capable of firing as a machinegun in fully automatic mode," (Doc. 154, Tr. T. at 66, Testimony of Adam Galbraith). The expert further stated that he had performed a live fire test of the weapon and that, by moving the selector lever to the forward position, the weapon fired in a fully automatic manner, (*Id*. at 67). He, thus, concluded that the M-1 carbine was "a machinegun under federal law," (*Id*.)

Based on this evidence, it is clear that obtaining an expert to testify that *some* M-1 carbines were manufactured with nonfunctional selector switches would have made no difference to the jury's verdict on Count 6. This is so because such testimony would not have rebutted the government's proof that, with a flip of the selector switch, the M-1 carbine at issue here fired in a fully automatic manner. Therefore, counsel did not provide ineffective assistance by failing to hire an expert whose expected testimony concerning selector switches would have been immaterial to whether petitioner possessed a machinegun, to wit, the Iver Johnson M-1 carbine, as modified, in furtherance of a drug trafficking crime.

17

### 6. Motion for a Mistrial based on Extraneous Influence on Jury (Claim 10)

Petitioner next asserts that, after the third day of trial, the proceedings were adjourned for two days and that, during that time, his case was the subject of local newspaper articles and broadcasts in media outlets. When the trial was reconvened, petitioner maintains that he "could literally sense the dramatic change in the jurors' facial expressions and general demeanor towards him," (Doc. 183-2, Petr.'s Br. at 21). Gregory deduces that the ubiquitous publicity concerning the trial, which occurred during the recess, possibly exerted an extraneous influence on members of the jury. Petitioner thus concludes that counsel should have raised the issue and that, had he done so, the Court might have held a *Remmer* hearing,[4] during which petitioner would have had an opportunity to develop his theory that the publicity surrounding his case prejudiced and contaminated the jury.

The United States argues, correctly, that Gregory has based his claim solely upon speculation that jurors may have encountered some of that media coverage and that, acting contrary to their instructions, would not have disregarded any media accounts of the prosecution and would not have assessed guilt based solely on the proof offered at the trial.

While Gregory speculates that jurors might have been exposed to media coverage of his trial, he has produced nothing to show that any juror actually read the newspaper articles or saw any of the media reports concerning his case, let alone relied on that information in deliberating on the charges against him. This lack of a threshold showing of extraneous influence, as required by *Remmer*, is fatal to his claim.

In *Remmer*, the defendant accomplished the requisite colorable showing of extraneous influences by filing a motion, which contained the facts surrounding a remark made by an individual to a juror, along with affidavits and newspaper articles reporting the incident. *Remmer*, 347 U.S. at 228-29. Merely sensing that jurors' facial expressions and demeanor reveal a possible exposure

---

[4] Where there are extraneous influences on a juror, the Supreme Court has required a hearing, "with all interested parties permitted to participate" in order "to determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial." *Remmer v. United States*, 347 U.S. 227, 230 (1954).

to the media coverage does not make out "a colorable claim of extraneous influence," so as to require further inquiry into the matter. *United States v. Davis*, 177 F.3d 552, 557 (6th Cir. 1999). "[T]he duty to investigate arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality. In other words, there must be something more than mere speculation." *Whitehead v. Cowan*, 263 F.3d 708, 722 (7th Cir. 2001) (citations omitted). Here there is rank speculation, but no colorable claim that the integrity of the jury proceedings were jeopardized.

Counsel did not make an unprofessional error by failing to raise the issue of extraneous influences on the jury, based solely on petitioner's suspicions of possible prejudicial jury exposure to media coverage. Further, no *Strickland* prejudice ensued because a *Remmer* hearing would not have been warranted, since conjecture alone is insufficient to make the necessary colorable showing. Gregory did not receive ineffective assistance in this instance and his claim that he did so is groundless.

### 7. *Improper Jury Instructions on Elements of the § 924(c) Offense (Claim 11)*

In this claim, Gregory charges that counsel failed to object to the instructions on Count 6 that, to find petitioner guilty of possessing a machinegun in furtherance of drug trafficking offense, the government had to prove that he knew that it was a machinegun as defined by federal law. By failing to object to this instruction, specifically the omission of the *mens rea* element of the offense, counsel rendered ineffective assistance, so Gregory argues.

Respondent, citing *Staples v. United States*, 511 U.S. 600, 619 (1994), counters that, while it is a defendant's knowledge that a firearm is a machinegun which provides the necessary intent element for the offense of possession of a machinegun, 18 U.S.C. § 922(o)(1), no such knowledge need be proven with regard to a § 924(c) crime. Relying on *United States v. Burwell*, 642 F.3d 1062 (D.C. Cir. 2011), and other cases, the United States argues that because the latter crime already requires proof that a defendant knowingly possessed a firearm, no additional *mens rea* need be shown as to a defendant's knowledge about the type of firearm. Respondent asserts that there was

no jury instruction error with respect to Count 6.    As respondent points out, the jury was instructed that, to find Gregory guilty of Count 6, it had to find, first, that he committed the crime charged in Count 4 (the oxycodone offense); second, that he knowingly possessed the firearm described in Count 6 of the indictment; third, that the possession of the firearm was in furtherance of the crime charged in Count 4; and fourth, that the firearm was a machinegun.  The terms in the instructions were then defined for the jury, specifically including the definition of a machinegun as contained in 26 U.S.C. § 5845(B).

The instructions given to the jury were correct, those instructions were taken almost verbatim from the Federal Pattern Criminal Jury Instructions, and there was no error in excluding an additional *mens rea* element in the §924(c) instructions on Count 6 because no extra mental element existed.

A failure to object to instructions which are not impermissible, does not fall outside "the wide range of professionally competent assistance" which the Sixth Amendment requires.  *Strickland*, 466 U.S. at 690.  And, no prejudice ensues from an attorney's failure to raise a meritless claim.  *See Greer*, 264 F.3d at 676; *Krist*, 804 F.2d at 946-47.

### 8. *Failure to Object to the PSR (Claim 13)*

In the eighth claim, Gregory faults counsel for failing to object to what he charges were miscalculations of his base level offense in Count 4 (oxycodone offense) and in his Criminal History—errors, he maintains, which caused him to be incorrectly sentenced on Counts 4 and 8.  More specifically, petitioner asserts that he was cleared of the boat charge theft offense and that the two marijuana charges listed in his PSR never happened.  Gregory further maintains that counsel did not  *review* the PSR with him; counsel only *showed* the document to him.  Not only that, but counsel failed to tell petitioner about the legal significance of the PSR and, by the time counsel so advised his client, it was too late to make any objections.

In response to this claim, the United States argues that only one prior offense involved marijuana and that, to the extent that Gregory's 1988 conviction for grand larceny stemmed from

a theft of a boat, petitioner received no criminal history points for the conviction and, thus, the conviction did not affect his criminal history category.

Though petitioner asserts that his base level offense in Count 4 was miscalculated, the fact of the matter is that the 22 pills of oxycodone of 40 mg per tablet which he possessed were converted to a marijuana equivalency of 5.896 kilograms, which sets a base offense level of 14 , under the Drug Quantity Table in § 2D1.1(c)(13), for at least 5 kilograms, but less than 10 kilograms of marijuana.  Therefore, Gregory's base offense level in Count 4 was correctly pegged at 14. Ultimately, however, the base level offense of 14 in Count 4 did not affect petitioner's sentencing on that count or on Count 8 either, as petitioner's base level offense was driven by his firearms convictions in Counts 1, 2 and 7, which were grouped under §3D1.2(d).

Grouping the firearms convictions in those three counts  resulted in a base level offense of 22 and, when 10 levels were added because the offense involved 200 or more firearms (defendant possessed approximately 204 firearms), the adjusted offense level was 32.  Since the offense levels of 14 (Count 4) and 13 (Count 8) are more than 9 levels less serious that the 32 offense level for the three firearms convictions, the base offense levels in those counts were disregarded in determining Gregory's adjusted offense level of 32.  § 3D1.4(c).  Therefore, there was no miscalculation of the base offense level and the ineffective assistance claim based on the fictitious miscalculation of that offense level does not hold water.

Gregory also asserts that his Criminal History was wrong, as he was "cleared" of the boat theft charge and as the two marijuana charges 'never happened," (Doc. 183-2, Affidavit of Dana P. Gregory at ¶ 17.

The PSR does not list a charge specifically for boat theft under the "adult criminal convictions" category, though it does show that, on September 30, 1988, Gregory pled guilty to a grand larceny charge.  This conviction was too old and did not result in the assessment of any points or contribute in the slightest to the computation of petitioner's criminal history score.  As to petitioner's allegation that he was not charged with the two marijuana offense listed in the PSR,

there is only one marijuana-related conviction included in his criminal history, to which he pled guilty and for which he received a sentence of one year and six months on June 28, 1995. This conviction for possession of marijuana for resale, which was verified by the probation officer utilizing TOMIS (a Tennessee Department of Correction database), was assigned 3 criminal history points under § 4A1.1(a). Gregory's probation file includes a copy of the conviction.

Those three criminal history points were properly assessed under the applicable guideline. Moreover, petitioner's naked assertion that the PSR included a marijuana conviction which "never happened" is not concrete evidence that he did not have the prior conviction which the PSR attributed to him. Since Gregory has not shown that his criminal history was incorrectly calculated or that it included points for a nonexistent conviction, then there was no error to which counsel *could* have objected and no deficient performance attached to counsel's failure to do so. Also, absent such a showing, no prejudice resulted from counsel's failure to challenge what was not an error in the first place.

### 9. Appellate Counsel Claims (Claim B)

In his ninth claim, Gregory asserts that his appellate counsel failed to raise various issues, which include: (1) that he was illegally sentenced on two separate §924(c) convictions which were attached to same predicate offense; (2) that the §924(c) sentences carried mandatory minimums contrary to statutory construction; (3) that his 151-month sentence for the § 841(a)(1) conviction (oxycodone) was unreasonable under § 3553; (4) that his Fourth Amendment issue was not argued properly, resulting in the Sixth Circuit's questioning of counsel's performance; and (5) that no ineffective assistance of counsel claims were raised in the appeal, despite petitioner's specific request to assert that trial counsel was ineffective for failing to pursue a *Franks* hearing.

The United States, in response, argues that the record disproves petitioner's assertion that counsel failed to challenge the reasonableness of his sentence; that petitioner has seized on and misconstrued a footnote in the Sixth Circuit's opinion as support for his proposition that counsel's performance was questioned; that claims of ineffective assistance are discouraged from being raised

on direct appeal; and that counsel has no obligation to litigate every single claim and can decide which issues to raise, as he is best suited to weed out weaker claims and focus on the stronger ones, which are more likely to succeed.

This Court has already found that the two §924(c) convictions and sentences were merged into a net 360-month sentence, that no double jeopardy infringement occurred, and that trial counsel did not give ineffective assistance with respect to the §924(c) sentences. Therefore, this issue has no merit and appellate counsel did not render a prejudicial performance in failing to present the cited §924(c) issues for consideration.

Also, the record discloses that, on appeal, counsel challenged the reasonableness of Gregory's sentence. *Gregory*, 311 Fed. Appx. at 860-62, 2009 WL 415994, at *11-*13. To suggest otherwise flies in the face of the record. Appellate counsel cannot be found ineffective for failing to raise issues which he, in fact, presented on direct review.

Furthermore, the Sixth Circuit's footnoted remark concerning counsel was a comment on counsel's audacity in challenging the denial of the motion to suppress, since counsel inexplicably passed up the opportunity to make the requisite showing to justify a *Franks* hearing. *Gregory*, 311 Fed. Appx. at 855, n.6, 2009 WL 415994, at *5 n.6. At any rate, though the Sixth Circuit found the suppression issue waived, it likewise found that the issuance of the search warrants was supported by probable cause and that the motion to suppress was properly denied. Whatever trial counsel's failings with respect to the *Franks* hearing, this comment does not show that appellate counsel rendered a prejudicial performance.

Finally, appellate counsel cannot be faulted for failing to raise claims of ineffective assistance of trial counsel on direct review, given the longstanding and firmly established precedent in the Sixth Circuit that ineffective assistance of counsel claims are rarely entertained on direct appeal, since the record is typically insufficiently developed to permit consideration of the claims, and that such claims instead should be offered on collateral review. *See e.g., United States v.*

23

*Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). In any event, Gregory has suffered no prejudice since he has been able to raise his ineffective assistance claims in this § 2255 proceeding.

**10. *Non-Disclosure of Favorable Evidence (Claim C)***

In the last claim in the § 2255 motion, petitioner alleges that the prosecution failed to disclose information related to tainted evidence. Much of that information has been raised as aspects of other claims, i.e., the theft of property by the police and others, under the pretext of "evidence collection, and the Inmate McNew incident. One new piece of supposedly hidden information concerns the "special treatment" given to "civilian" witnesses. Gregory contends that this information could have been used to discredit law enforcement witnesses and the government's cooperating witnesses. As noted at the outset of this opinion, *Brady v. Maryland*, 373 U.S. 83 (1963), serves as authority for this claim.

The United States asserts a defense of procedural default to defeat this claim, arguing that petitioner's *Brady* allegations were not raised on direct appeal though they could have been raised. Respondent also argues, in the alternative, that the allegations are meritless.

Where a claim could have been asserted on direct appeal but was not, it is considered procedurally defaulted and a petitioner must demonstrate: (1) "cause" for his failure to raise the issue previously and "actual prejudice" resulting from his failure to present the claim on direct appeal, or (2) that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). Cause can be shown where interference by the authorities has rendered compliance with the rule impracticable, where counsel rendered ineffective assistance in violation of the prisoner's right under the Sixth Amendment, or where the legal or factual basis of a claim is not reasonably available at the time of the procedural default. *Murray v. Carrier*, 477 U.S. 478, 488, 492 (1986).

A petitioner demonstrates prejudice by establishing that the constitutional error "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). Courts are entitled to presume, once

24

a direct appeal has been decided, that a defendant "stands fairly and finally convicted," and thus, absent a showing of "cause and actual prejudice," raising a claim pursuant to § 2255 will not substitute for raising the claim on direct appeal. *Id.* at 164-65; *accord Elzy* 205 F.3d at 884.

Because this claim was not offered on direct appeal and because petitioner had offered no showing of either cause and prejudice or actual innocence, federal review is now foreclosed by his procedural default.

Even if not procedurally defaulted, however, Gregory's *Brady* claim fails. A *Brady* claim is composed of three parts: (1) the evidence in question was favorable to petitioner; (2) the prosecution purposefully or inadvertently suppressed the relevant evidence; and (3) the suppression of the evidence resulted in prejudice. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The Court has already found petitioner's contentions regarding the theft of his property not to be supported by specific facts and to be conclusory. Conclusory claims cannot sustain issuance of § 2255 relief. Also, as respondent points out, while Gregory supposes and may firmly believe that his property was stolen, he has provided nothing concrete to demonstrate that there existed any evidence of the malfeasance. Equally important to the issue at hand, without any developed facts, there is nothing from which to conclude that, assuming the evidence existed, it was favorable to him or that its suppression resulted in prejudice.

Likewise, the Court has determined previously that petitioner has shown no nexus between the purloined Valium by Inmate McNew and the evidence of petitioner's possession of oxycodone. Without some kind of connection between these two things, once again, there is nothing to show that it was favorable and that suppressing it was prejudicial to the defense. Regarding the assertion that the prosecution withheld evidence that civilian witnesses were given special treatment, Gregory has neither described the special treatment nor identified the witnesses who profited thereby. Absent allegations to flesh out the "special treatment" assertions, none of the three *Brady* components have been met and Gregory's last claim fails on its merits as well.

25

## V.  Conclusion

For the foregoing reasons, the Court concludes that petitioner's convictions and sentences were not in violation of the Constitution or laws of the United States.  Accordingly, his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 will be **DENIED** and his motion **DISMISSED**.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals disapproves of the issuance of blanket denials of certificates of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000)..

A certificate of appealability should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack*, 529 U.S. at 484.  Having examined each of petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of Gregory's claims were debatable or wrong.  Therefore, the Court will **DENY** a certificate of appealibility.

A separate judgment will enter.


**ENTER**:


s/J. RONNIE GREER<br>
UNITED STATES DISTRICT JUDGE